Downey, Judge,
delivered the opinion of the court:
The plaintiffs are the duly appointed and acting executors of the last will and testament of Joseph H. Woodward, deceased, a resident and citizen of the State of Alabama, who died testate, December 17, 1917. His will was duly admitted to probate' and letters testamentary were issued to the plaintiffs named therein as executors bn December 21, 1917. There is no controversy as to the facts and they are found as agreed upon by the parties.
Under the provisions of the war revenue act of October 3, 1917 (40 Stat., 300 at 324), amending the act of September 8, 1916 (39 Stat., 756 at 777), as amended by the act of March 5, 1917 (39 Stat., 1000 at 1002), the executors paid to the *144 collector of internal revenue an estate tax in the sum of $489,834.07. No question is raised as to the validity of the estate tax so paid nor as to its amount. It becomes an important feature of the case in another respect.
The entire estate of the decedent passed into the hands of the executors, the plaintiffs herein, immediately after their qualification as such and during the year 1918 and prior to the 21st day of December of that year they collected income and earnings from the property and assets of the estate, all of such income being derived from stocks, bonds, choses in action, and personal property except $2,130.10 derived from real property and none of said income was collected from property specifically devised or bequeathed by the will of the decedent. On the 12th of March, 1919, as required by section 225 of the revenue act of 1918 (40 Stat., 1074), the executors made and filed with the proper collector of internal revenue a return of the income received by them during the year 1918 as executors of said estate and in said income-tax return they claimed as a proper deduction under the provisions of section 214 of said revenue act the amount of said tax which had been paid by them to the collector of internal revenue on the 8th day of February, 1919. The Commissioner of Internal Revenue refused to allow said deduction and on said return assessed an income tax against said executors in the amount of $165,075.78 and made demand through the collector of internal revenue on said executors for the payment of the income tax so assessed. To avoid penalties or summary proceedings for the enforcement of the said income tax the executors on July 21, 1920, paid the same, but at the time of making payment protested and gave notice that they would institute suit to recover the same. Thereafter, on July 21,1920, said executors filed with the Commissioner of Internal Revenue an application for the refund of all of the said income tax so paid, which application was thereafter denied by the Commissioner of Internal Revenue and this suit was instituted for the recovery of said sum of $165,075.72. In this instance-the amount of the estate tax was in excess of the total amount of the income, so that the action is brought for the recovery of the full amount of the income tax paid for the *145 year 1918. But the question is as to the income tax for that year the estate tax which accrued during the same year irrespective of the relative amounts.
The contention of the plaintiffs is that imposed upon the “net income” of the estate and that by section 212 the net income was declared to mean the “ gross income ” as defined in section 213, less the deductions allowed by section 214, and it is contended that the estate tax which accrued during the year 1918 and was paid, as stated by the executors, is specifically within the provisions of section 214. That section provides that in computing net income there shall be allowed as deductions (1) all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business; (2)'or interest paid or accrued within the taxable year on indebtedness, with an exception not material here; (3) “taxes paid or accrued within the taxable year imposed (a) by the authority of the United States, except income, war profits and excess profits taxes,” or (5) by the authority of any of its possessions with the same exception, or (e) by the authority of any State, Territory, county, school district, or municipality of any State or Territory, or (d) in certain cases by authority of a foreign country. In addition to these there are other deductions authorized by section 214 not material here.
The defendant, in support of its contention that the estate tax could not be properly claimed as a deduction in the computation of the net income of the estate on which the income tax for the year 1918 was assessed, lays down in its brief two propositions, as follows:
(1) “The Federal estate tax is a tax upon the passing of property from the dead to the living; it is toll taken from the property transferred and does not constitute a part of the estate which is received by the' executors to be administered and settled.”
(2) “ The income tax is imposed upon the income received from the estate by the executors during the period of administration; the liquidation of the Federal estate tax by such executors does not constitute a payment of taxes by the estate within the meaning of section 214' (a) of the revenue act of 1918.”
*146 discussing the first proposition the estate tax is referred to as “ an excise on the transmission of the estate from the dead to the living,” and it is said that “ it is a ‘ toll ’ cut out of the estate in passing, and the property that reaches the executors is the original property diminished by the amount of the tax. It follows that the amount of the tax does not constitute a part of the estate which is administered by the executors.” And referring also to the income tax, as well as the estate tax, it is said that—
“ The Government collects an income tax on the income accruing up to the moment of death. It then takes out of the estate a certain part known as the Federal estate tax. The remainder of the property of the deceased passes to the executors and becomes the estate, the income of which is taxable - while the estate is being administered. When the estate passes into the possession of an executor he -holds in trust for the United States that portion which is required to be deducted as a transfer tax. The remainder is the estate which he holds in trust for creditors and beneficiaries, the income of which is taxable. When he pays- to the Government that which he has been holding in trust for it, he pays nothing out of the estate whose income is subject to tax. The law separates this part of the original estate from that part which is to be treated as the estate for purposes of the -income tax.”
The first proposition seems to be the foundation stone of the defendant’s contention, and if it is not Avell founded argument predicated upon it must fail of support. For the purposes of its consideration it may be conceded, as contended, that the Federal estate tax is a tax upon the passing of property from the dead to the living, since for the purposes of the present discussion of the proposition it is immaterial whether that tax is a tax upon the passing of the property or upon the property itself. The theory of the proposition otherwise is that there is an immediate segregation of a part of the estate and a withholding thereof from the usual processes of administration, and that therefore the tax is not paid out of the estate to be administered.
Such a theory seems to be in conflict with the real facts and we may well question the right to inject into an interpretation of the law a theory^ no matter how desirable it may be from some standpoints, if inconsistency between it and the *147 real facts must necessarily result. We may not, in construing statutes, disregard the plain meaning of words. We may not in fact apply recognized rules of construction at all if there is no ambiguity and hence no room for construction and we may not adopt an interpretative theory as to the law if it be inconsistent with established principles or the plain provisions of the. law itself.
In considering this theory we are confronted, first, with established and well-recognized principles, and, second, by pertinent and forceful provisions found in the taxing act itself. It is well settled, first, that the Federal Government does not undertake to enact statutes of descents or to provide for the administration of estates. These are matters reserved to the States themselves and it may not be inappropriate to observe that the general principles applicable to probate procedure in the administration of estates may be found to be much the same in all the States of the Union. Aside from the general principle it is important in construing the taxing act in the feature with which we are here concerned to observe that it recognizes the subjection of the entire estate of a decedent to the usual processes of administration under the established probate procedure of the proper jurisdiction and in no place suggests the theory that the act is itself intended to remove a part of the estate therefrom.
Section 205 of the act recognizes the fact that the entire estate of a decedent comes into the possession of his executors, if executors there be, for, return as to the gross estate, the deductions, and the resultant net estate is to be made by the executors as provided in the act and they are also to report “ the tax paid or payable thereon.” There is found no suggestion, even that a part of the estate is segregated at the death of the decedent and held, not by the executors as such, but as trustees in trust for the United States and such a theory is excluded by the act itself. There are too many contingencies, notably the matter of deductions provided for in section 203, and like matters, to permit of such a theory and, incidentally, it may be suggested that the allowance by that section as a deduction, of “such other *148 charges against the estate as are allowed by the laws of the jurisdiction,” strongly confirms the proposition as to a recognition of the proper probate jurisdiction over the entire estate.
If the theory of a segregation in fact as of the date of the death of the decedent can not be maintained, it would seem that it must be a theory attaching in some intangible way to an unascertained part of the estate to be made certain during the processes of administration and operative retroactively. But the processes themselves exclude the idea that a part of the estate has not passed into the hands of the executors as executors.
But further, it is provided that the tax shall be paid by the executors (sec. 207) and that the collector shall grant receipts therefor in duplicate and that such receipts shall entitle the executors to be credited and allowed the amount thereof by any court having jurisdiction to audit or settle his accounts. These provisions can certainly be interpreted in no other way than as a recognition of the fact that the executors as executors, accountable to the proper probate court, and not as trustees for the United States, are chargeable with the whole estate which has come to their hands and are entitled to an acquittance as to the amount paid to the collector ¿s estate tax just as upon presentment of proper vouchers they are to be credited with the amount of any proper debt paid or any proper expense of administration.
And there are other features, perhaps minor in a sense, but enlightening. The tax shall be a lien for ten years upon the gross estate (sec. 209) except parts used for payments of claims and expenses of administration, a provision entirely inconsistent with the theory of a segregation, for a segregated part of a thing can scarcely be made a lien, in a legal sense, on the remaining part, though the fixing of a lien is a recognized method of securing a payment to be made. And peculiarly, even after the amount of the tax, in theory a segregated part of the estate, is ascertained, the amount of money to be paid may still fluctuate. The tax is due one year after the decedent’s death (sec. 204); but if paid before it is due, a discount at the rate of five per centum per annum from the time of payment to the date *149 when due is to be allowed. Thus the segregated part is to be reduced by some fraction of five per centum; but for whose benefit? Under the theory of a segregation and a nonadministration and a holding in trust for the United States it must result that the United States allows its trustees a part of its property for turning it over before required to do so.
But on the other hand, for delays, interest is to be “ added as a part of the tax ” at the rate of ten per centum per annum from the time of the decedent’s death, but at only six per centum if by reason of claims against the estate, necessary litigation or other unavoidable delay the tax can not be determined, a situation which under the theory advanced not only imposes a penalty on the estate for avoidable delays on the part of the executors but also for unavoidable delays, and changes the basis of the segregation and makes it contingent upon the processes of administration.
While referring to the stated theory of the defense and before proceeding with such other views as may occur, it is appropriate to resort to the extension of the theory, possibly necessary to its justification, to the question of the source of the income tax to be levied. The theory is, supporting the idea of a segregation, that it is the portion of the estate remaining after the segregation which is'held in trust for creditors and beneficiaries and “ the income of which is taxable.” Again the theory is in conflict with the facts. More than that, the Government has proceeded upon one theory in collecting the income tax and defends upon another, for the income tax assessed and collected was upon the income produced by the entire estate. And what an anomalous situation must result from an attempt to apply the theory ! If the theory is correct, then income has been taxed which was not taxable. It was income derived from a portion of the estate segregated to the United States, and while it may be said that the earnings belong to the owner of the capital there is no provision for the payment of earnings as a part of the estate tax.
But primarily the executors are accountable to the proper probate court for their management of their trust and they could hardly discharge themselves from responsibility by accounting for less than all the income derived from the *150 entire income-producing estate. Neither could they justify themselves in so handling the estate as to convert an income-producing portion thereof into idle assets.
The various provisions thus recited seem to clearly indicate that the tax is a charge upon the estate. The statute calls it an “ estate tax.” In Knowlton v. Moore, 178 U. S., 41, 65, the use of the heading “ legacies and distributive shares of personal property ” in the act was taken as indicative of what was in fact taxed. Here it is “ estate.” There the tax was upon the passing of legacies or distributive shares. The tax under consideration is imposed upon the transfer of the net estate. In Knowlton v. Moore the statute under consideration was the act of 1898, and it was declared to mean either that the tax was imposed on the passing of the whole amount of the personal estate, or on the passing of legacies or distributive shares of personalty, determined either by the separate sum of each legacy or distributive share or by the volume of the whole personal estate. The court, speaking through Mr. Justice (now Chief Justice) White, say (p. 65) : “ The statute clearly imposes the duty on the particular legacies or distributive shares, and not on the whole personal estate. It does not say that the tax is levied on the personal estate left by the deceased person, but it is imposed on legacies or distributive shares arising from such property.”
It must be recognized that the Congress, in considering the act of 1916, was familiar with the act of 1898 and the construction of it by the Supreme Court in Knowlton v. Moore. Indeed, by reference to the report of the Committee on Ways and Means (Report No. 922, 64th Cong., 1st sess.), having the bill in charge, it appears that the distinction between an estate tax upon the transfer of the estate and a tax upon the shares passing to distributees or legatees was had in view by the committee. It was said “Your committee deemed it advisable to recommend a Federal estate tax upon the transfer of the net estate rather than upon the shares passing to heirs and distributees or devisees and legatees.” See upon this point In re Hamlin, 226 N. Y., 407, where the court considers the proceedings in Congress upon the passage of the bill.
*151 The question as to what was intended would seem to be set at rest, however, by section 208 of the act, 39 Stat., 779, which provides for the collection of the tax if not paid within 60 days after it is due, and declares the purpose of the act as follows: “ It being the purpose and intent of this title that so far as is practicable, and unless otherwise directed by the will of the decedent, the tax shall be paid out of the estate before its distribution.”
As sustaining the contention of the defendant that the estate tax “is a toll taken from the property transferred and does not constitute a part of the estate which is received by the executors to be administered and settled,” we are referred to an opinion of the Acting Attorney General, dated April 10, 1920, and some cases to be noticed. It is said in that opinion, speaking of the executor or administrator:
“ It is in his capacity as the representative of those ultimately entitled,to the estate that he is subject to income tax. By virtue of the Federal estate tax he may be said to act in a dual capacity. He must first take possession of that part of the estate which the Government has reserved to itself as a transfer tax. As to this he takes possession for the Government, and his sole duty is to turn it over to the Government. What comes to his hands as the representative of the beneficiaries of the estate is what is left of the original estate after deducting this tax.”
This view ignores the legal status of an administrator, who is the personal representative of the decedent, and seeks to make him a representative of heirs or distributees.
As already stated, the estate tax is not a given percentage of the estate in kind. If the decedent left an estate composed largely of live stock the estate tax would not be satisfied by-taking a part of the live stock; or if it were an estate composed of stocks and bonds the estate tax is not satisfied by taking such a percentage of the bonds and such a percentage of the shares. These different kinds of property are to be valued, and the estate tax is a sum equal to a percentage, which is made progressive, of the value. Nutt v. Knut, 200 U. S. 12, 21; United States v. Field, 255 U. S., 257.
Prentiss v. Eisner, 260 Fed., 589, affirmed by the Circuit Court of Appeals, 267 Fed., 16, relied on by defendant, pre *152 sented the question as to whether a legatee against whom had been assessed an inheritance tax under the laws of the State of New York could deduct that tax from her gross income in rendering a return of the income for taxation under the Federal statute. The case is different from the one before us in several aspects: (1) It involved a construction of the act of 1913; (2) it involved the right of the legatee to set off against her income a State inheritance tax; (3) it did not involve the right of executors or administrators charged with the duty of paying out of the estate of the decedent the estate tax to make a deduction from the gross income on account of a Federal tax which they must pay out of the estate in their hands. It was held by the Circuit Court of Appeals in the case mentioned that the legacy which the plaintiff received did not become her property until after it had suffered a diminution to the amount of the tax, and that the State inheritance tax was not a tax paid out of her individual estate, “ but was á payment out of the estate of her deceased father of that part of his estate which the State of New York had appropriated to itself, which payment was the condition precedent to the allowance by the State of the vesting of the remainder in the legatee.” It is not difficult to understand why a legatee is not allowed to deduct from her income tax the amount which was paid out of the estate before the amount of the legacy to which she would succeed could be known. The statute provides that the legacies themselves are not income but become capital in the hands of the legatees, and its purpose, as stated in the act, is to collect the estate tax out of the. estate before it reaches the hands of legatees or distributees. The case just mentioned admits that the tax is laid upon the estate. It recognizes the distinction between the tax on the legatee’s right of succession and a tax upon the transfer of the estate itself.
The case of In re Hamlin, supra, was decided by the Court of Appeals of New York and involved, among other questions, the construction which the court would give to the tax imposed by the act of 1916. It was held that the act created an estate tax as distinguished from an inheritance tax and made it payable from the estate. The case con *153 siders not only the language of the act but the history of its passage through Congress, and said: “When the Congress provided that the tax was imposed upon the value of the net estate, the manner in which said value should be determined, and that the executor should pay the tax, and in section [208] above quoted said: ‘It being the purpose and intent of this title that so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution,’ the conclusion is inevitable that the tax was not imposed on legacies.”
Another case to which we are referred is Plunkett v. Old Colony Trust Company, 124 N. E., 265, wherein the Massa-' chusetts court holds that the tax imposed by the revenue acts of 1916 and 1917 is an estate tax imposed upon the net estate transferred by death and not upon a succession resulting from death. The single question presented was whether the Federal tax which had been paid should be charged entirely against the residue of the estate or apportioned pro rata among all the devisees and legatees, and after full consideration of the authorities it was held as has been stated.
In Lederer v. Northern Trust Co., 262 Fed., 52, the question was whether the collateral inheritance taco imposed by the State of Pennsylvania fell within the deductions allowed by section 203 of the Federal estate-tax act of 1916 in arriving at the value of the net estate on which the Federal act imposes the tax. It appeared that the Supreme Court of Pennsylvania construed the collateral inheritance tax of that State to be an estate tax and not a legacy tax, and that as such it was levied on and made a charge against the estate of the decedent. It was therefore held by the Circuit Court of Appeals that the State tax fell within the provision of the Federal act as a charge against the estate of the decedent allowed by the laws of the jurisdiction under which the estate was being settled, and was therefore deductible from the gross estate in determining the net estate against which the Federal estate tax is assesed.
In United States v. Perkins, 163 U. S., 625, it appeared that the testator had bequeathed his estate to the United *154 States Government, and the question was whether that bequest was subject to the inheritance tax authorized by the State of New York. The court held that the State act was not open to the objection that it was an attempt to fax the property of the United States, “ since the tax is imposed upon the legacy before it reaches the hands of the Government. The legacy becomes the property of the United States only after it has suffered a diminution to the amount of the tax, and it is only upon this condition that the legislature assents to a bequest of it.” This would be equally true if the estate had owed debts which had to be paid before the amount of the legacy could be known, or if there were liens upon the property bequeathed or devised.
In none of the cases to which we have referred is there a holding that the State or Federal Government, by either an inheritance or estate tax, takes a distinct part of or* interest in an estate as distinguished from a tax equal to a stated percentage of its value.
Corbin v. Townshend, 103 Atl., 647, involved the question of the amount of succession tax under the State statute, and the Connecticut court allowed as deductions the item of taxes paid, including the Federal estate tax, “as an administration expense.” The court said:
“ The Federal act of 1916 imposes a tax payable out of the estate before distribution, thus differing from the Federal inheritance tax of 1898, payable by the individual beneficiaries. * * * It is taken from the net estate before the distributive shares are determined rather than off the distributive shares. Its payment diminishes pro tanto the share of each beneficiary. The executor or administrator must pay the tax out of the estate before the shares of the legatees are ascertained. It is an obligation against the estate, and payable like any expense which falls under the head of administration expenses.”
In re Roebling's Estate, 104 Atl., 295, in the Prerogative Court of New Jersey, the question was whether the estate tax imposed by the Revenue Act of 1916 was to be deducted from the value of the estates of decedents in assessing the transfer of the inheritance tax imposed by the State. It was held that the Federal tax must be deducted because it was a tax upon the estate. The court observed that the *155 Federal tax resembles the probate duty of the act of July 1, 1862, 12 Stat., 488, “ which was payable by the executor out of the estate, while the legacy duty therein provided for was payable the beneficiaries.”
Another case was that of In re Knight’s Estate, before the Supreme Court of Pennsylvania, 104 Atl., 765, wherein the same ruling was made as that by the New Jersey court. The Supreme Court affirms the opinion of the lower court, which said relative to the tax: “ It is denominated an estate tax, not a tax upon the succession or inheritance, and it is charged upon and payable out of the net estate of the decedent. It is imposed without regard to the provisions of the will or the law of the several States, the paramount taxing power of the Federal Government takes effect at the moment of the owner’s death upon his entire estate, subject only to specific deductions. * * * and it Requires payment therefrom of a tax according to a graduated scale, regulated by the net amount of the taxable estate.”
Reference has been made to the case of In re Hamlin, 226 N. Y., 407, holding that the estate tax is payable out of the estate. Also to the case of Plunkett v. Old Colony Trust Company, wherein substantially the same ruling is made by the Massachusetts court.
In People v. Northern Trust Co., 289 Ill., 475, 124 N. E. 662, it is held that in computing the State inheritance tax on the value of property passing by a will the executor is entitled to have, first deducted therefrom the Federal estate tax. The court said:
“ The Federal estate tax is a charge, or an expense, against the estate of the decedent rather than against the shares of the legatees or the distributees, and as part of the expense of administration this tax should be deducted before com-ptiting the State inheritance tax.”
It thus appears from the terms of the statute itself and its declared purpose that the estate tax is a tax which is levied upon, and payable out of, the estate in the hands of the' executors, and that the authorities in some instances hold it to be a charge of administration, while all of them hold it to be payable out of the estate.
*156 In allowing a deduction of taxes from gross income in •order to ascertain the net income the statute excepts “ income, war-profits, and excess-profits taxes.” 40 Stat., 1067. It •does not except the estate tax.
We are, in effect, asked to construe the statute so as to nullify one of its plain provisions, to wit, one of the exemptions provided for in the statute'. If the correct construction should be a matter of doubt we think it proper to follow the rule laid down in Gould v. Gould, 245 U. S., 151 at 153. “ In the interpretation of the statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the Government and in favor of the citizen.” (Cited in the Field Case, supra.) We do not feel that we are justified in adding another exception to those provided for in the statute. If Congress had intended that the estate tax should not be deducted in determining the net income it would have said so and included it in the exceptions, “income, war-profits, and excess-profits taxes.”
Inasmuch as the estate tax must necessarily reduce the estate itself which ultimately goes to the distributees, legatees, or devisees, and .reduces it by a tax that is ascertained by a progressive percentage of the value, it may well be that Congress, recognizing that feature, did not except the estate tax from the deductions authorized by the statute.
We are not unmindful of the importance of this holding and of its possible effect on revenues and the Public Treasury, but we can not conclude that such matters should be in ■anywise controlling.
We are of the opinion that the' plaintiffs are entitled to judgment as claimed, and it is so ordered. Judgment for plaintiffs in the sum of $165,075.78.
Graham, Judge; Hat, Judge; Booth, Judge; and Campbell, Chief Justice, concur. >